In February, 1834, the defendants, "Waters, Laird Ridpath, gave their bond and warrant of attorney to confess judgment to Samuel Comly in $15,000, to secure him against loss from certain advances made and to be made to them in the course of their business as cotton manufacturers on the Brandywine. Judgment was entered on this bond by confession in November, 1837, and execution issued to May term, 1838, at which time they were indebted to Comly from fifteen to sixty thousand dollars. In April, 1837, Comly having failed, and the defendants being apprehensive of insolvency, they executed a bond in $18,690 63, with warrant of attorney to confess judgment, to McMakin, Burgess Kelly, on which judgment was entered in April, 1837, and fi. fa., issued to May term, 1837, having the preference in point of time to Comly's execution. The bill was filed to set aside this judgment as fraudulent and without consideration; and the consideration set up in the answer is, that the bond was given to McMakin, Burgess Kelly to pay a debt of $400, due to Kelly, and the balance in trust to pay certain other creditors of Waters, Laird Ridpath, not named in the bond or judgment, but according to a schedule now produced.
The first question then is, whether this bond, supposing it good to create a trust, and that such trust may be proved by parol, is void *Page 131 
under the prohibitions of our acts of assembly against frandulent insolvency, considering the circumstances under which it was made.
Preferring creditors is not necessarily fraudulent. On the contrary, it may often be equitable and right. But it offers temptations and affords facilities for fraud; and, on this account, it has been prohibited by our law in all cases of insolvents making assignments, either voluntarily or on taking the benefit of the insolvent laws.
The provisions of our acts of assembly, divested of much verbiage, are these: — If any person (who shall voluntarily, or on taking the benefit of the insolvent laws of this State make an assignment for the benefit of his creditors) either upon making such assignment, or previously and with the intention or in contemplation of taking the benefit of such law or of making such assignment, shall fraudulently confess any judgment for any money not justly due; or shall fraudulently, and without adequate consideration, execute any bond for the payment of money; or, after the making of such assignment, shall fraudulently or collusively confess any judgment, or make and antedate any bond with the intent that such judgment or bond shall be paid or set up as a demand against the property assigned by means of such assignment, every person so offending shall suffer fine and imprisonment, and forfeit all benefit of the insolvent laws: "and if any person, in contemplation of insolvency, or of taking the benefit of any of the insolvent laws of this State, shall make an assignment of his estate for the benefit of his creditors, and in or by such assignment, either under the provisions thereof or otherwise, shall prefer any one or more creditors to others, or secure to any one of his creditors a greater proportion of his debt than the others, every such assignment, so preferring creditors, shall be deemed fraudulent and absolutely void; and the estate, c., contained in any such assignment, shall be liable to be seized for the debts of the assignor," c.
The question then is, whether either of these provisions embraces the case of a failing debtor executing a bond for a bona fide debt, and thereby preferring a creditor. It is clear to my mind that they do not. The act embraces three classes of cases: 1st, the confession of a judgment or executing a bond for money not justly due, either on making an assignment or before, and with the intention of taking the benefit, or of making an assignment; 2d, the confession of a judgment or executing a bond even for a bona fide debt after
making an assignment, and with the intent that such bond or judgment shall be set up against the assignment; and 3d, the preferring of creditors upon making an assignment, either by the terms thereof or otherwise. *Page 132 
Neither of these classes embraces the case of a debtor in failing circumstances, or in contemplation of insolvency, executing a bond to a bona fide creditor before assignment; and, as there is nothing which makes such an act fraudulent in itself, I cannot say that it is illegal and void. It is neither fraudulent at common law, nor within the statute 13 Eliz. ch. 5, which looks only to "feigned and covinous conveyances, bonds," c., made to "defraud creditors and others of their just and lawful debts," c., and carefully excludes bona fide bonds and conveyances made on a good consideration. (Rob'ts. onfraud. conv.; 2 Twyne's case; 1 Smith's lead. ca.
1.) "There is no doubt but a debtor (so he be not a trader, in contemplation of bankruptcy,) may openly prefer one creditor to the rest, and transfer property to him even after the others have commenced their actions." (1 Smith 9.) The giving such bond can be no more illegal than the payment of a just debt by a debtor in failing circumstances, or even in contemplation of insolvency. I presume such payments are constantly being made; I have never known them questioned, nor do I know that the power of a failing debtor to execute a bond, or confess a judgment in favor of one or more of his creditors for a valid and bona fide debt, has ever been denied by any judicial decision in this State. On the contrary, the point was made in the case ofNewells vs. Morgan, in the Court of Appeals, and the court sustained the judgment, though on a bond given by Morgan in contemplation of insolvency. (2 Harr. Rep. 228.) There can be no doubt that creditors have frequently been preferred in this way. It would be difficult, if not impossible, to fix any period of time at which a failing debtor should be considered within the policy of our insolvent laws, which look to an equal division of his property, if we do not take the time fixed by the law itself in reference to bona fide debts, viz: the period of actual assignment. It is the act of assignment, either voluntary or on taking the benefit that brings the debtor within the scope of those laws: once under them the debtor loses all control over his property, which then becomes subject to equal distribution; but, before that act, the principle of diligence, which is an equally favored principle of our law, gives to the fair creditor, first obtaining judgment and execution, a preference in payment.
Being of opinion then, that a debtor in failing circumstances may, before assignment, pay a debt or execute a bond to a bona fide creditor, I think the chancellor has done right in giving effect to this execution to the amount of $400; the debt due to Kelly.
But the question remains to be considered whether this bond and *Page 133 
judgment to McMakin, Burgess Kelly are good for the balance said to be in trust for other creditors of Waters, Laird Ridpath, not named in the bond or privy to it, and this as against their generalcreditors. If the question were between the preferred creditors and the trustees on a bill to establish the trust as against the trustees having obtained the fund by means of the judgment; or in a controversy between the obligor in the bond or his representatives and the preferred creditors claiming to be cestuis que trust, a court of equity would go far to sustain the trust; and, according to some of the cases, admit parol evidence in proof of it. Such was the case in Benbow vs.Townsend (1 Mylne Keene 506; 7 Cond. Rep.
143,) where the bill was by the executor and residuary legatees of William Townsend against the cestui que trust, Job Townsend, who claimed a sum of £ 2,000 lent by William Townsend in his name upon the parol declaration of the lender that the principal sum was intended for the benefit of Job. The court executed the trust being of personal property and not within the statute of frauds. So also the case ofMoses vs. Murgatroyd, relied on by the appellants from 1 Johns. Ch. Rep. 119, was a contest for the trust property between the cestuis que trust and the general creditors (the children) of the trustee; and not a question between the general creditors of the assignor, and particular creditors under an assignment in trust. The case is very much involved by facts, but the substance of it, so far as concerns this question, is, that Ogden being indebted to Moses Sons (plaintiffs,) gave them notes indorsed by Samuel Murgatroyd; and, to indemnify him, Ogden, by deed assigned to him part of a cargo of coffee not then arrived. Ogden afterwards became insolvent, and Samuel Murgatroyd became liable as the indorser of these notes, and promised the holders payment out of the cargo when it should arrive. Samuel Murgatroyd died, and Thomas Murgatroyd (defendant) became his administrator, and received a part of the cargo of coffee under Ogden's assignment; confessed a judgment to the widow of Samuel Murgatroyd in behalf of his children, as creditors of his estate, and refused payment of the proceeds of the coffee to the notes, claiming the same as a part of the assets of Samuel Murgatroyd's estate, applicable to this judgment. The bill was by the note holders against the administrator and creditors of Samuel Murgatroyd, claiming the proceeds of the coffee under the trusts of the assignment. The chancellor decided that the property was held by Murgatroyd in trust for a specific purpose, and the proceeds were not assets in the hands of his administrator for the creditors of the trustee, but went into his *Page 134 
hands subject to the trust. The answer of the administratoradmitted that the deed of assignment, though general in its terms, was for a special purpose, and the court relied on this admission as opening the way to parol proof to show what that purpose was; and, the trust being proved by Ogden, the assignor, and by the admissions of both the Murgatroyds, the court, to prevent a fraud, carried it into execution.
Very different is the case of a debtor making an absolute conveyance, or executing a bond voluntarily, without any consideration, and without the privity of any one, and afterwards seeking to set up by parol a trust in favor of particular creditors as against the claims of his general creditors. Such a transaction is open to all the danger of fraud designed to be guarded against by the statute of Elizabeth, and has many of the features which the judges in Twyne's case,
regarded as marks of actual fraud. (1 Smith's Cases 1, 7.) It is secret; it retains a power in the obligor either alone or by collusion with the trustee to vary or defeat the trust; it binds not the cestuis que trust, for they might, notwithstanding such bond, proceed by other means for the collection of their debts, and it seeks to give to certain creditors the priority due only to superior diligence, without any diligence on their part, or even the knowledge that they have been so advanced. It is particularly objectionable, because it leaves it in the power of the debtor and trustee to set up or disavow the trust at pleasure; invites to collusion between them, and presents strong temptations and opportunities of fraud against the general creditors.
The legal character of such a transaction is explained in the cases of Garrard vs. Lord Lauderdale, andWalwyn vs. Coutts, (3 Sim. Rep. 1, 14; 5Cond. Ch. Rep. 6;) in Acton vs. Woodgate, andBill vs. Cureton, (2 Mylne Keene 495, 511.) The obligee is regarded as the trustee of the debtor making such voluntary bond, and not of the creditor. The deed merely operates as a power to the trustees, revocable by the debtor, and has the same effect as if the debtor had delivered money to an agent to pay his creditors, and before any payment made by the agent, or communication by him to the creditors, had recalled the money so delivered." "A man who, without any communication with his creditors, puts property into the hands of trustees for the purpose of paying his debts, proposes only a benefit to himself, and not to his creditors; it would be a result most remote from his contemplation, if it should be held that any creditor discovering the transaction, should be able to fasten on the property and invest himself with the character of cestui que trust." *Page 135 
For the same, and, I apprehend, a stronger reason, a debtor cannot by an absolute bond, made voluntarily, without the privity or assent or knowledge of his creditor, give such creditor a preference, and establish by parol a trust in his favor, though the bond be not in his name, or upon any consideration flowing from him, or in any manner expressed to be for his use.
It was supposed in the argument that these cases of Walwyn
vs. Coutts and Garrard vs. Lord Lauderdale,
conflicted with the older cases of Ellison Ellison,Pulvertoft Pulvertoft, and the other cases cited by the appellant's counsel; but their consistency is vindicated by the master of the rolls, in the still later case of Bill vs.Cureton. It is still admitted that a voluntary settlement would be binding on the settlor, where the trust is actually created;
but the court will not give its assistance to constitute a cestui que trust without consideration, and then execute the trust. And it is held that a conveyance to trustees to pay creditors not parties to the deed, does not create a trust, but is only an arrangement for the convenience of the debtor, which he may revoke or annul at pleasure, unless there be some contract direct or indirect with a cestui que trust, who is party or privy to the deed. (2 Mylne Keene 503.) And according to Garrard vs. Lord Lauderdale, even a communication of the trust by the trustee to the creditors, was considered not sufficient to make the conveyance obligatory and irrevocable; though this is questioned in Acton vs. Woodgate, where it is held to be clear, that if no such communication be made, the trust is not created; and the property and the whole arrangement are still in the debtor's control.
Looking at the facts of the case before us, we find them very strong on this point. The persons for whose benefit this bond was given to McMakin, Burgess Kelly, are not named or alluded to in the bond. No communication of the trust was ever made to them, according to any proof in the cause; certainly none to Samuel Comly, who was one of them to a very large amount: it does not even appear on the proof that the cestuis que trust were made known to the trustees themselves, or that the schedule now produced was delivered to the trustees, or even placed out of the control of the debtors. It is not so stated in the answer of Waters Laird; and the answer of the trustees on this point, sets out that the bond was made to them according to their information, knowledge and belief, "in trust to secure the payment of their several debts due to the persons whose names, and the amount of whose debts respectively,the said John Waters alledged were mentioned in a written statement or schedule *Page 136 
made out by the said Waters Laird." If, in truth, this schedule was kept by the obligors, and not delivered to McMakin, Burgess Kelly, they had it in their power at all times to revoke or annul this arrangement, and render the bond inoperative for any thing beyond the sum due Kelly: but, supposing it was made out and delivered at the execution of the bond; still, without communication with the creditors, notice to or acceptance by them, the principle of the cases regards it as a transaction by the debtor for his own benefit, and not as creating a valid trust for the benefit of his creditors.
Upon this ground, and not because the execution of a bond for a bona fide debt is prohibited by our act against preferring creditors by insolvents, I concur with the chancellor in opinion that the de-defendants below are not entitled to recover under their execution, any sum beyond the amount due to Kelly, one of the obligees, to wit: the sum of $400, with the interest thereon. And I cannot well reconcile this decree of the chancellor with the idea that such a preference, given by a failing debtor directly to his creditor, is prohibited by the act referred to, because the bond if void under that act is void altogether as against the general creditors, and even Kelly, in respect to whom there is a consideration, could recover nothing under it.
 Decree affirmed.